IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| TAYWAN DEWAYNE CAMPBELL, | ) | |
| AIS 210809, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE NO. 2:20-cv-18-WKW-JTA |
| | ) | |
| SGT. T. RODGERS, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**RECOMMENDATION OF THE MAGISTRATE JUDGE**

I.    **Introduction**

Plaintiff Taywan Campbell, an indigent state inmate proceeding *pro se*, files this 42 U.S.C. § 1983 civil rights complaint seeking relief for certain claimed violations of his federally protected rights. He brings this action for damages complaining that the existence of dangerous conditions at the Ventress Correctional Facility caused him to be injured in an inmate attack on September 8, 2019. Doc. No. 1 at 2–3. The named defendants are Sergeant Tangela Rodgers and Corrections Officer Khiry Thomas who are or were employed by the Alabama Department of Corrections ("ADOC") at the time of the event

about which Plaintiff complains.[1] Doc. No. 7. Plaintiff requests $2.5 million in damages, but he does not state in which capacity he sues the named defendants.[2] Doc. No. 1 at 5.

Defendants filed a Special Report with supplement (Docs. No. 30, 33) which includes relevant evidentiary materials in support, including affidavits, prison documents, photographs, and medical records addressing the claims presented by Plaintiff. In their Special Report Defendants deny they violated Plaintiff's constitutional rights.

After reviewing the Special Report and supplement, the Court issued an Order on June 26, 2020, requiring Plaintiff to respond to the reports with affidavits or statements made under penalty of perjury and other evidentiary materials. Doc. No. 37. This Order specifically cautioned that, unless a party presented sufficient legal cause, the Court would treat the Special Report as a motion for summary judgment, and rule on the motion after

---

[1] Plaintiff named the Ventress Correctional Facility and the Alabama Department of Corrections ("ADOC") as defendants in the original Complaint. Doc. No. 1. The Court therefore directed Plaintiff to file an amendment identifying the individuals responsible for the alleged violations of his constitutional rights. Doc. No. 6. Plaintiff filed an amendment naming as defendants Rodgers, Thomas and Correctional Officer David Dennis. Doc. No. 7. Although the United States Marshals Service served Officer Dennis with the Complaint, amendment, and the Order of Procedure on July 28, 2020 (Doc. No. 40) and the Court ordered him to file an Answer and Special Report (Doc. No. 41), Officer Dennis failed to answer or otherwise respond.  Finding that the time for Dennis to answer the Complaint had expired (*see* Fed. R. Civ. P. 12(a)(1)(A), that no entry of default has been entered, and that Plaintiff has not requested entry of default for Officer Dennis' failure to answer the Complaint, the Court entered an Order on August 1, 2022, directing Plaintiff to show cause why entry of default had not been requested for Officer Dennis. Doc. No. 47. The Court informed Plaintiff his failure to show cause or file a motion for entry of default within the allowed time period would result in the dismissal of Officer Dennis for Plaintiff's failure to prosecute. *Id.* Plaintiff filed no response to the August 1, 2022, Order. Accordingly, by Order entered December 22, 2022, the Court terminated Defendant Dennis as a party and dismissed Plaintiff's claims against him without prejudice. Doc. No. 49.

[2] On May 19, 2020, the Court entered an order terminating the Ventress Correctional Facility and the ADOC as parties. Doc. No. 31.

considering any response. *Id.* at 2–3. Plaintiff filed a response to the Special Report, as supplemented. Doc. No. 38. Pursuant to the June 26 Order, the Court now treats Defendants' Special Report as a motion for summary judgment and concludes it is due to be granted.

## II.    Standard of Review

Under Rule 56(a) of the Federal Rules of Civil Procedure, a reviewing court must grant a motion for summary judgment if the movant shows that there is no genuine dispute as to any material fact and that the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56(a). A dispute "is 'genuine' if the record as a whole could lead a reasonable trier of fact to find for the nonmoving party. . . . [A dispute] is 'material' if it might affect the outcome of the case under the governing law." *Redwing Carriers, Inc. v. Saraland Apartments*, 94 F.3d 1489, 1496 (11th Cir. 1996) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

The party asking for summary judgment always bears the initial responsibility of informing the district court of the basis for its motion and alerting the court to portions of the record that support the motion. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). However, once the movant has satisfied this burden, the nonmovant is similarly required to cite portions of the record showing the existence of a material factual dispute. *Id.* at 324. To avoid summary judgment, the nonmovant "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). In determining whether a genuine dispute for trial exists, the court must view all the evidence in the light most favorable to the nonmovant

and draw all justifiable inferences from the evidence in the nonmoving party's favor. *McCormick v. City of Fort Lauderdale*, 333 F.3d 1234, 1243 (11th Cir. 2003); *see* Fed. R. Civ. P. 56(a).

Although factual inferences must be viewed in a light most favorable to the nonmoving party and *pro se* complaints are entitled to liberal interpretation, a *pro se* litigant does not escape the burden of sufficiently establishing a genuine dispute of material fact. *Beard v. Banks*, 548 U.S. 521, 525 (2006); *Brown v. Crawford*, 906 F.2d 667, 670 (11th Cir. 1990). Thus, a plaintiff's *pro se* status alone does not mandate this Court disregard elementary principles of production and proof in a civil case.

## III.    Background

On September 8, 2019, at approximately 5:00 p.m. an inmate stabbed Plaintiff with a prison-made knife. Doc. No. 1 at 2–3; Doc. No. 7 at 1–2. Plaintiff maintains Defendants showed little to no concern in response to the incident and contends the incident occurred because of understaffing at Ventress. Doc. No. 1 at 3. Plaintiff filed an amendment to the Complaint in which he identified Sergeant Rodgers and Officer Thomas as defendants. Doc. No. 7. Plaintiff signed his Complaint under penalty of perjury (Doc.  No. 1 at 4) and his affidavit in response to Defendants' Special Report is verified and sworn to under penalty of perjury (Doc. No. 38). Therefore, the Court will treat the Complaint and Plaintiff's affidavit as evidence when ruling on Defendants' motion for summary judgment. *Sears v. Roberts*, 922 F.3d 1199, 1206 (11th Cir. 2019) (citation omitted). Plaintiff's amendment to the Complaint (Doc. No. 7),  however, is unsworn. Therefore, the Court does not treat its factual assertions as evidence on summary judgment. *See id*.; *Roy*

4

*v. Ivy*, 53 F.4th 1338 (11th Cir. 2022) (citing *Carr v. Tatangelo*, 338 F.3d 1259, 1273 n.26 (11th Cir. 2003), *as amended*, (Sept. 29, 2003) (noting that "[u]nsworn statements may not be considered by a district court in evaluating a motion for summary judgment."); *see also Mosley v. MeriStar Mgmt. Co., LLC*, 137 F. A'ppx 248, 252 n.3 (11th Cir. 2005) (noting that "the complaint was unverified and therefore could not be considered evidence supporting [plaintiff's] claim" on summary judgment).

## IV.   Discussion

### A.   Sovereign Immunity and Individual Defendants

Plaintiff seeks money damages on his claims for relief. In response, Defendants assert Plaintiff's suit against them, to the extent they are sued in their official capacities, is barred by the Eleventh Amendment immunity. Official capacity lawsuits are "in all respects other than name, . . . treated as a suit against the entity." *Kentucky v. Graham*, 473 U.S. 159, 166 (1985). The Eleventh Circuit has held:

> [T]he Eleventh Amendment prohibits federal courts from entertaining suits by private parties against States and their agencies [or employees]. There are two exceptions to this prohibition: where the state has waived its immunity or where Congress has abrogated that immunity. A State's consent to suit must be unequivocally expressed in the text of [a] relevant statute. Waiver may not be implied. Likewise, Congress' intent to abrogate the States' immunity from suit must be obvious from a clear legislative statement.

*Selensky v. Alabama*, 619 F. App'x 846, 848–49 (11th Cir. 2015) (quotation marks and citation omitted). Thus, a state official may not be sued in his official capacity unless the State has waived its Eleventh Amendment immunity, *see Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984), or Congress has abrogated the State's immunity, *see Seminole Tribe of Fla. v. Fla.*, 517 U.S. 44, 59 (1996). "Alabama has not waived its

Eleventh Amendment immunity in § 1983 cases, nor has Congress abated it." *Holmes v. Hale*, 701 F. App'x 751, 753 (11th Cir. 2017) (citing *Carr v. City of Florence, Ala.*, 916 F.2d 1521, 1525 (11th Cir. 1990)); Ala. Const. Art. I, § 14. Thus, to the extent Plaintiff sues Defendants in their official capacities, as state actors, they are entitled to sovereign immunity under the Eleventh Amendment for claims seeking monetary damages. *Selensky*, 619 F. App'x at 849; *Jackson v. Georgia Dep't of Transp.*, 16 F.3d 1573, 1575 (11th Cir. 1994).

### B.    Qualified Immunity

Regarding Plaintiff's claims against Defendants in their individual capacities, they argue that Plaintiff's allegations fail to state a claim and that they are entitled to qualified immunity. Qualified immunity offers complete protection from civil damages for government officials sued in their individual capacities if their conduct does  not violate "clearly established statutory or constitutional rights of which a reasonable person would have known." *Hope v. Pelzer*, 536 U.S. 730, 739 (2002) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Qualified immunity is not merely a defense against liability but immunity from suit, and the Supreme Court "repeatedly [has] stressed the importance of resolving immunity questions at the earliest possible stage in litigation."  *Pearson v. Callahan*, 555 U.S. 223, 231–32 (2009) (quotation marks and citation omitted). To receive qualified immunity, the public official must first prove he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred. *Lee v. Ferraro*, 284 F.3d 1188, 1194 (11th Cir. 2002). There is no dispute that Defendants here were acting within the course and scope of their discretionary authority when the challenged incident

occurred. Plaintiff must, therefore, allege facts that, when read in a light most favorable to him, show that Defendants are not entitled to qualified immunity. *Cottone v. Jenne*, 326 F.3d 1352, 1358 (11th Cir. 2003).

To satisfy his burden, Plaintiff must show two things: (1) that a defendant committed a constitutional violation and (2) that the constitutional right a defendant violated was "clearly established." *Crosby v. Monroe Cnty.*, 394 F.3d 1328, 1332 (11th Cir. 2004). "To be clearly established, a right must be sufficiently clear that every reasonable official would [have understood] that what he is doing violates that right. . . . In other words, existing precedent must have placed the statutory or constitutional question beyond debate." *Reichle v. Howards*, 566 U.S. 658, 664 (2012) (citations and quotation marks omitted) (alteration in original). "Clearly established law" means (1) "a materially similar case has already been decided;" (2) "a broader, clearly established principle that should control the novel facts of the situation;" or (3) "the conduct involved in the case may so obviously violate the constitution that prior case law is unnecessary." *Gaines v. Wardynski*, 871 F.3d 1203, 1208–09 (11th Cir. 2017) (citations omitted). The controlling authority is from "the Supreme Court of the United States, the Eleventh Circuit, or the highest court in the relevant state." *Id.* at 1209. "Qualified immunity gives government officials breathing room to make reasonable but mistaken judgments, and protects all but the plainly incompetent or those who knowingly violate the law." *Messerschmidt v. Millender*, 565 U.S. 535, 546 (2012) (citations and quotation marks omitted). The Eleventh Circuit "has stated many times that if case law, in factual terms, has not staked out a bright line, qualified immunity almost always protects the defendant." *Gaines*, 871 F.3d at 1210

(citations and quotation marks omitted). "Exact factual identity with the previously decided case is not required, but the unlawfulness of the conduct must be apparent from pre-existing law." *Coffin v. Brandau*, 642 F.3d 999, 1013 (11th Cir. 2011) (citation omitted). If a plaintiff cannot establish both elements to satisfy his burden, the defendants are entitled to qualified immunity, and the court may analyze the elements "in whatever order is deemed most appropriate for the case." *Rehberg v. Paulk*, 611 F.3d 828, 839 (11th Cir. 2010) (citing *Pearson*, 555 U.S. at 241–42).

### C.   Failure to Protect Claim

Plaintiff alleges a failure to protect claim based on alleged dangerous conditions at Ventress. According to the Complaint, Plaintiff was stabbed and had his arm broken after being attacked by another inmate on September 8, 2019. Doc. No. 1 at 2–3; *see also* Doc. No. 7. The Court considers Plaintiff's claim to arise under the Eighth Amendment.

"It is undisputed that the treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment." *Helling v. McKinney*, 509 U.S. 25, 31 (1993). The Eighth Amendment imposes a duty on prison officials to "take reasonable measures to guarantee the safety of the inmates." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (quotation marks and citation). "Although  prison officials have a duty to protect inmates from violence by other prisoners, they are not the guarantors of a prisoner's safety. *Purcell ex rel. Est. of Morgan v. Toombs Co., Ga*., 400 F.3d 1313, 1321 (11th Cir. 2005). "An Eighth Amendment violation will occur when a substantial risk of serious harm, of which the official is subjectively aware, exists and the official does not respond[] reasonably to the risk." *Carter v. Galloway*, 352 F.3d 1346,

1349 (11th Cir. 2003) (quotation marks and citation omitted). Therefore, to prevail on a failure to protect claim, Plaintiff must demonstrate: "(1) a substantial risk of serious harm; (2) the defendants' deliberate indifference to that risk; and (3) a causal connection between the defendants' conduct and the Eighth Amendment violation." *Brooks v. Warden*, 800 F.3d 1295, 1301 (11th Cir. 2015).

Settled law requires the establishment of both objective and subjective elements to demonstrate an Eighth Amendment violation. *Caldwell v. Warden, FCI Talladega*, 748 F.3d 1090, 1099 (11th Cir. 2014). Regarding the objective elements of a deliberate indifference claim, an inmate must first show "an objectively substantial risk of serious harm . . . exist[ed]. . . Second, once it is established that the official is aware of this substantial risk, the official must react to this risk in an objectively unreasonable manner." *Marsh v. Butler Cnty, Ala*., 268 F.3d 1014, 1028-29 (11th Cir. 2001). As to the subjective elements, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference. . . . The Eighth Amendment does not outlaw cruel and unusual 'conditions'; it outlaws cruel and unusual 'punishments'. . . . [A]n official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment." *Farmer*, 511 U.S. at 837-38; *Campbell v. Sikes*, 169 F.3d 1353, 1364 (11th Cir. 1999) (citing *Farmer*, 511 U.S. at 838) (explaining that "[p]roof that the defendant should have perceived the risk, but did not, is insufficient."); *Cottrell v. Caldwell*, 85 F.3d 1480, 1491 (11th Cir. 1996) (same). The conduct at issue "must involve more than ordinary lack of due care for the prisoner's

interests or safety. . . . It is obduracy and wantonness, not inadvertence or error in good faith, that characterize the conduct prohibited by the Cruel and Unusual Punishments Clause[.]" *Whitley v. Albers*, 475 U.S. 312, 319 (1986).

Prison officials cannot be liable under the Eighth Amendment unless they know of and disregard an excessive or substantial risk to inmate health or safety. *Farmer*, 511 U.S. at 837.

> To be deliberately indifferent, Defendants must have been subjectively aware of the substantial risk of serious harm in order to have had a sufficiently culpable state of mind. *Farmer*, 511 U.S. at 834-38, 114 S. Ct. at 1977-80; *Wilson v. Seiter*, 501 U.S. 294, 299, 111 S. Ct. 2321, 2324-25, 115 L. Ed. 2d 271 (1991). . . . Even assuming the existence of a serious risk of harm and legal causation, the prison official must be aware of specific facts from which an inference could be drawn that a substantial risk of serious harm exists – and the prison official must also draw that inference. *Farmer*, 511 U.S. at 837, 14 S.Ct. at 1979.

*Carter*, 352 F.3d at 1349 (quotation marks omitted). A defendant's subjective knowledge of the risk must be specific to that defendant because "imputed or collective knowledge cannot serve as the basis for a claim of deliberate indifference. . . . Each individual defendant must be judged separately and on the basis of what that person [knew at the time of the incident]." *Burnette v. Taylor*, 533 F.3d 1325, 1331 (11th Cir. 2008). Moreover, "[t]he known risk of injury must be a strong likelihood, rather than a mere possibility before a [state official's] failure to act can constitute deliberate indifference." *Brown v. Hughes*, 894 F.2d 1533, 1537 (11th Cir. 1990) (citations and quotation marks omitted). Even where a prison official perceives a serious risk of harm to an inmate, the official "may still prevail if he responded reasonably to the risk, even if the harm ultimately was not averted." *Comstock v. McCrary*, 273 F.3d 693, 706 (6th Cir. 2001) (citation and quotation marks

omitted). In sum, prison officials cannot be held liable under the Eighth Amendment unless there is an objectively substantial risk of harm to an inmate, the defendants have knowledge of this substantial risk of harm, and with this knowledge, consciously disregard the risk. *Farmer*, 511 U.S. at 837.

Plaintiff's claims stem from the following facts, viewed in the light most favorable to him. On September 8, 2019, Officer Davis Dennis was assigned as F Dorm Rover. Doc. No. 30-1 at 2, Doc. No. 30-3 at 11. At approximately 5:13 p.m. he observed inmate Joshua Willingham running from F1 Dorm covered in blood. *Id.* Sergeant Rodgers was notified. *Id.* The Duty Officer Report indicates:

> Inmate Willingham was escort[ed] to the Health Care Unit, via stretcher, for a medical assessment. Officer Jonathan Pittman observed inmate Taywan Campbell, B/210809 (El-41A), entering E Dormitory with blood on his clothing area. Inmate Campbell was escorted to the Health Care Unit for a medical assessment. It was discovered that inmates Campbell and Willingham were in a previous homosexual relationship. Sergeant Rodgers questioned both inmates concerning the incident. Inmate Willingham stated, "He mad because I don't want to be with him anymore so he want to start trying to extort me." Inmate Campbell stated, "I should have been hurt him. He done ate up all my food then lie on me." Nurse Amy Matthews, LPN, advised Sergeant Rodgers that inmate Willingham would need to be transported to Medical Center Barbour by ambulance for further treatment. At approximately 5:47 pm, Louisville Fire Rescue arrived at Ventress back gate. At approximately 6:10 pm, Louisville Fire Rescue departed Ventress back gate en route to Medical Center Barbour. Officer Patrice Blackmon provided ambulance security. Officer Shacora Johnson trail in transport vehicle 1943. Warden II Gwendolyn Babers was notified of the incident. Inmate Campbell was reassigned to Restricted Housing Unit B3 pending disciplinary action for fighting with a weapon. Inmate Willingham is pending disciplinary action for fighting without a weapon.

Doc. No. 30-3 at 4.

Prison records reflect Plaintiff received a medical exam around 6:00 p.m. Doc. No. 30-3 at 2. In the "statement" section of Plaintiff's September 8, 2019, body chart, Plaintiff told medical personnel: "I was just standing there talking to my partner." Doc. No. 30-3 at 5.  Medical personnel noted a quarter inch puncture wound to Plaintiff's left shoulder, an abrasion to his left shoulder, and a half inch puncture wound to his left forearm. *Id.*

Defendants' evidence includes a second incident report prepared on September 13, 2019.

> On September 13, 2019, at approximately 11:14pm, a phone call was received from Shamsuiddin Lalani, at Southeast Medical Center in Dothan, Alabama. Lalani informed that inmate Joshua Willingham, B/281030, had been pronounced dead. Inmate Willingham succumbed to his injuries from a physical altercation that occurred with inmate Taywan Campbell B/210809, on September 8, 2019, see incident report VCF-19-01612.  It was alleged that inmates Willingham and Campbell were in an unauthorized relationship. Agent Kelly Smith was notified. Agent Smith advised Lieutenant Victor Nieves that she would pass the information on to the agent that dealt with the initial incident. Inmate Willingham's mother was notified and was allowed to visit inmate Willingham in the hospital earlier that week. Inmate Campbell is currently being housed on the Health Care Unit ward due to injuries he received. The medical staff was advised that inmate Campbell needed to be placed in restrictive housing. The medical staff informed that the doctor needed to be contacted to ensure that he could be placed in Restrictive Housing.

Doc. No. 30-8 at 1.

Defendants submitted affidavits regarding their knowledge of the subject matter of the Complaint and amendment. Docs. No. 30-1, 30-2. Officer Thomas testifies he was assigned to F Dorm Cubicle on September 18, 2019. Doc.  No. 30-2 at 1. During that time Officer Thomas observed Officer Dennis roving the F-4 side of the dorm but testifies that at no time did he see Plaintiff being stabbed or hurt. *Id.*

12

Sergeant Rodgers testifies that at approximately 5:13 on September 8, 2019, as she assisted with the feeding of chow, Officer Dennis notified her that inmate Willingham had been assaulted and was being taken to the health care unit for medical attention. Doc. No. 30-1 at 3–4. Five minutes later another correctional officer informed Sergeant Rodgers that Plaintiff, who had blood on his clothes, entered E Dorm and might be a suspect in the assault. *Id.* at 4. Sergeant Rodgers testifies that Plaintiff was escorted to the lobby of the infirmary where he waited for treatment of his wounds considered to be non-life threatening while medical staff attended to inmate Willingham who had sustained life-threatening injuries. *Id.* After inmate Willingham was transported by ambulance for additional medical care, medical personnel examined and treated Plaintiff in-house for his injuries. *Id.*

In response to Defendants' evidence, Plaintiff submitted a sworn affidavit. Doc. No. 38. He states that on September 8, 2019, between 5:00 p.m. and 5:30 p.m., he walked from E Dorm to F Dorm and received permission from Officers Dennis and Thomas—who were in the lobby—to visit a friend. *Id.* at 1. While visiting with his friend, Plaintiff saw inmate Willingham and asked whether he had his (Plaintiff's) money. *Id.* at 2. Inmate Willingham said nothing and walked away. *Id.* Inmate Willingham subsequently walked up behind Plaintiff and stabbed him in the neck. *Id.* The two inmates engaged in a struggle and Plaintiff states they fought over possession of the knife. *Id.* During the altercation Inmate Willingham fell to the floor but jumped up and ran from the dorm. *Id.* Plaintiff walked to the bathroom where he saw Officers Dennis and Thomas and they escorted him from the dorm. *Id.* at 2–3. Officer Dennis told Plaintiff to go to the infirmary which had been

13

informed that Plaintiff was on the way. *Id.* at 4. Plaintiff arrived at the infirmary and sat down in the lobby. *Id.* After a few minutes Sergeant Rodgers appeared and observed that Plaintiff was bleeding. *Id.* Sergeant Rodgers left and returned with a camera to take pictures of Plaintiff's injuries. *Id.* Plaintiff states he remained in the lobby of the infirmary for about an hour before he received medical attention after which he was placed in a lock up cell still bleeding. *Id.*

It is axiomatic that confrontations among inmates are common in the prison setting as prisoners engage in an unending struggle for position and power among the incarcerated. Because "a risk of harm to some degree always exists by the nature of it[ ] being a [prison]," not every condition rises to the level of an Eighth Amendment violation. *Purcell ex rel. Estate of Morgan*, 400 F.3d at 1323; *Gullatte v. Potts*, 654 F.2d 1007, 1012 (5th Cir. 1981) (holding that "the constitutional rights of inmates are [not] violated every time a prisoner is injured. It would not be reasonable to impose such an absolute and clearly unworkable responsibility on prison officials."); *see also Hudson v. Palmer*, 468 U.S. 517, 526-27 (1984) (holding that "within [a prison's] volatile 'community,' prison administrators are . . . under an obligation to take reasonable measures to guarantee the safety of the inmates.").

Plaintiff makes the conclusory allegation that Ventress was inadequately staffed at the time of the challenged incident. However, he makes no allegation that Sergeant Rodgers or Officer Thomas had involvement in staffing decisions on September 8, 2019, and does not refute Defendants' evidentiary materials which demonstrate that Sergeant Rodgers was in another area of the institution at the time of the assault and that Officer Thomas was assigned as the cubicle operator of F Dorm and not a rover within the dorm. Doc. No. 30-

14

3 at 2–4, 11, 12. Plaintiff also has not shown that the conditions under which he was incarcerated presented a "substantial risk of harm" to him, *Farmer,* 511 U.S. at 834, to which Defendants responded in an objectively unreasonable manner, *Marsh,* 268 F.3d at 1028–1029. His general assertion of inadequate staffing does not, by itself, show a culpable state of mind by Defendants to disregard an excessive risk to inmate health or safety. *Farmer*, 511 U.S. at 837. Liability cannot be imposed upon prison officials "solely because of the presence of objectively inhumane prison conditions." *Id.* at 838. Rather, to be liable under the Eighth Amendment, a defendant must know of and disregard an excessive or substantial risk. *Id*.

Here, Plaintiff does not present any evidence showing inmate Willingham posed "an objectively substantial serious risk of harm" to him prior to the assault about which he complains. Plaintiff makes no allegation that prior to the challenged incident he complained to any prison official, or made any prison official aware, that he was in danger of being attacked by a fellow inmate. And Plaintiff does not indicate he knew he was in any danger prior to the attack. Docs. No. 1, 38. There is also no indication or allegation that Defendants had information of any threat to Plaintiff from another inmate from which they could infer that a substantial risk of harm existed to Plaintiff prior to the attack at issue. *Carter*, 352 F.3d at 1349, 1350 (explaining that "there must be much more than mere awareness of [a] ... generally problematic nature [of another inmate].... [A] generalized awareness of risk ... does not satisfy the subjective awareness requirement."); *see also Prater v. Dahm*, 89 F.3d 538, 541 (8th Cir. 1996) (observing that "threats between inmates are common and do not,

under all circumstances, serve to impute actual knowledge of a substantial risk of harm."). Instead, the record reflects that the altercation occurred without notice or provocation.

Even had Plaintiff satisfied the objective component of his deliberate indifference claim, he fails to establish the subjective component because he has not shown that any Defendant subjectively knew of a risk of harm to him posed by inmate Willingham. *Caldwell*, 748 F.3d at 1099-1100 (explaining a defendant "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."). Plaintiff's assertion of inadequate staffing and the implication that such condition made Ventress unsafe is not evidence that any Defendant was subjectively aware of a substantial risk of serious harm to Plaintiff posed by inmate Willingham at the time of the challenged assault. *Johnson v. Boyd*, 568 F. App'x 719, 722 (11th Cir. 2014) (explaining that complaint was properly dismissed for failure to state a claim because "[n]owhere does the complaint allege, nor can it be plausibly inferred, that the defendants subjectively foresaw or knew of a substantial risk of injury posed by [inmate-attacker]."); *Murphy v. Turpin*, 159 F. App'x 945, 948 (11th Cir. 2005) (explaining that "because [Plaintiff] alleged no facts indicating that any officer was aware of a substantial risk of serious harm to him from [his attacker] and failed to take protective measures, his [failure to protect] claim fails."); *Harrison v Culliver*, 746 F.3d 1288, 1300 (11th Cir. 2014) (explaining that although increasing the number of officers in an area of the facility "may have improved security, [the warden's] decision not to do so did not create a substantial risk of harm).

Further, without disputing that inmate-on-inmate assaults occur in the correctional system and assuming the institutional facility was experiencing understaffing at the time of the challenged incident, Plaintiff presents no direct facts, as opposed to conclusions, to support his general allegation that Ventress was not adequately staffed when he was assaulted nor does he show that this condition constituted a contributing factor to the September 8, 2019, assault. Moreover, no evidence has been presented of rampant violence at Ventress. Settled law holds that an occasional and isolated attack by one prisoner on another does not demonstrate the existence of unconstitutional conditions inside the prison. *Purcell ex rel Estate of Morgan*, 400 F.3d at 1320.  A prison is an inherently dangerous place which is why the law requires a plaintiff asserting an Eighth Amendment violation to show the defendants had knowledge of a "strong likelihood, rather than a mere possibility" of injury. *Brown*, 894 F.2d 1537 (internal quotation marks and citations omitted).

On this record, there is no probative evidence of "an objectively substantial serious risk of harm" posed by any inmate to Plaintiff prior to the challenged assault as is necessary to establish deliberate indifference. *Marsh*, 268 F.3d at 1028-1029. And the evidentiary materials submitted by Defendants refute Plaintiff's allegations they acted with deliberate indifference to his safety. Absent is any evidence Defendants actually knew of a risk to Plaintiff from another inmate regarding the incident about which he complains. Thus, Plaintiff has not presented facts sufficient to create a genuine dispute regarding "actual knowledge" of a substantial risk of harm. *See Marbury v. Warden*, 936 F.3d 1227, 1236 (11th Cir. 2019) (discussing "[t]he unfortunate reality [ ] that threats between inmates are

17

common and do not, under all circumstances, serve to impute actual knowledge of a substantial risk of harm.") (internal quotation and citation omitted). Even if Defendants were negligent in carrying out some of their duties, mere negligence cannot support a finding of deliberate indifference. *See Farmer*, 511 U.S. at 835.  Since the record fails to demonstrate that the incident between Plaintiff and inmate Willingham occurred due to any deliberate indifference or reckless disregard by Defendants, they are entitled to qualified immunity and summary judgment is due to be granted in their favor on Plaintiff's failure to protect claim. *See Celotex Corp*., 477 U.S. at 322; *Hope*, 536 U.S. at 736.

### D.   Medical Claim

Plaintiff challenges as constitutionally inadequate the response by Sergeant Rodgers and Officer Thomas to the injuries he sustained in the altercation with inmate Willingham. He maintains Officers Dennis and Thomas escorted him from the dorm following the incident, Officer Dennis told him to go to the infirmary where medical staff were expecting him, and that despite his obvious wounds, Sergeant Rodgers only took pictures of his injuries. Doc. No. 38 at 2–3. Plaintiff states he then remained in the lobby of the infirmary for approximately one hour before receiving medical treatment. *Id.* at 3. The Court considers Plaintiff's allegations against Sergeant Rodgers and Officer Thomas as asserting a claim of deliberate indifference to his serious medical needs in violation of the Eighth Amendment.

To prevail in a suit based on an Eighth Amendment claim regarding a denial of constitutionally adequate medical attention, a prisoner must show at a minimum that prison or medical officials have acted with deliberate indifference to serious medical needs.

*Estelle v. Gamble*, 429 U.S. 97 (1976); *Taylor v. Adams*, 221 F.3d 1254 (11th Cir. 2000). Because society does not expect that prisoners will have unqualified access to health care, deliberate indifference to medical needs amounts to an Eighth Amendment violation only if those needs are "serious." *Hudson  v. McMillian*, 503 U.S. 1, 9 (1992). To demonstrate a denial of medical care in violation of the Eighth Amendment, Plaintiff must prove both an objective and subjective component. The objective element requires Plaintiff to demonstrate the existence of an "objectively serious medical need." *Farrow v. West*, 320 F.3d 1235, 1243 (11th Cir. 2003). A serious medical need is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Id*. (quotation marks and citation omitted). "In either of these situations, the medical need must be one that, if left unattended, pos[es] a substantial risk of serious harm." *Id*. (quotation marks and citation omitted).

The subjective component of Plaintiff's medical claim requires that he demonstrate "deliberate indifference" to a serious medical need.  *Farrow*, 320 F.3d at 1243. Deliberate indifference is shown by establishing that a defendant had actual knowledge or awareness of an obvious risk to a plaintiff's serious medical need and failed to take steps to abate that risk. It may be demonstrated by either actual intent or reckless disregard.  *See Farmer*, 511 U.S. at 834. Reckless disregard occurs when a defendant "knows of and disregards an excessive risk to inmate health or safety; the [defendant] must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists; and he must also draw the inference."  *Id*. at 837; *Johnson v. Quinones*, 145 F.3d 164, 168 (4th

Cir. 1998) (holding a defendant must have actual knowledge of a serious condition, not just knowledge of symptoms, and ignore known risk to serious condition to warrant finding of deliberate indifference). "[A]an official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment." *Farmer*, 511 U.S. at 838.

"Deliberate indifference" also entails more than mere negligence. *Estelle*, 429 U.S. at 106; *Farmer*, 511 U.S. at 835. "Delay in access to medical attention can violate the Eighth Amendment . . . when it is tantamount to unnecessary and wanton infliction of pain." *Hill v. Dekalb Reg'l Youth Det. Ctr.*, 40 F.3d 1176, 1187 (11th Cir. 1994) (quotation marks and citations omitted). "Cases stating a constitutional claim for immediate or emergency medical attention have concerned medical needs that are obvious even to a layperson because they involve life-threatening conditions or situations where it is apparent that delay would detrimentally exacerbate the medical problem." *Id.*

The unrefuted evidence of record reflects that Sergeant Rodgers reported to the infirmary after being notified of the incident between Plaintiff and inmate Willingham which had occurred shortly after 5:00 p.m. on September 8, 2019. Doc. No. 30-1; Doc. No. 30-3 at 2–4. When Sergeant Rodgers arrived at the infirmary medical staff were administering treatment to inmate Willingham due to the severity of his injuries. Doc. No. 30-1 at 2, 4. Plaintiff remained in the infirmary lobby until 5:55 p.m. at which time medical staff prepared a body chart for Plaintiff which notated and described his injuries. No. 30-3 at 5. Plaintiff's medical records show that medical personnel treated him for his stab

wounds, placed his left arm in a sling, prescribed him pain medication, and directed him to report to the infirmary for daily bandage changes. Doc. No. 33-1 at 6, 17, 29.

Here, Plaintiff has failed to establish deliberate indifference on the part of the correctional defendants. First, Plaintiff does not name as a defendant any prison personnel who provided medical treatment to him on September 8, 2019, following the altercation with inmate Willingham. Next, there is no evidence the defendant correctional officers were responsible for determining the level of necessary medical care for Plaintiff. Doc. No. 33-1. Finally, while the record shows Plaintiff had an objectively serious medical need requiring medical treatment, he presents no evidence that Defendants disregarded any known serious risk to his health by denying, delaying, or interfering with his ability to obtain necessary medical care. *Taylor*, 221 F.3 at 1258; *McElligott v. Foley*, 182 F.3d 1248, 1255 (11th Cir. 1999) (stating that for liability to attach, the official must know of and then disregard an excessive risk of harm to the inmate); *Johnson*, 145 F.3d at 168; *Farmer*, 511 U.S. at 838.

In sum, the record in this matter is devoid of evidence that Defendants had knowledge of specific facts from which an inference could be drawn that a substantial risk of harm existed to Plaintiff, and that Defendants actually drew this inference and thereafter ignored the risk. Plaintiff has therefore failed to establish the requisite element of subjective awareness on the part of Defendants. *Carter*, 352 F.3d at 1350. Accordingly, Defendants are entitled to qualified immunity and summary judgment is due to be granted in their favor on Plaintiff's claim of deliberate indifference. *See Celotex Corp.*, 477 U.S. at 322; *Hope*, 536 U.S. at 736.

To the extent Plaintiff seeks to hold Defendants liable for the treatment provided by medical professionals, he is likewise entitled to no relief as

> "[t]he law does not impose upon [correctional officials] a duty to directly supervise health care personnel, to set treatment policy for the medical staff or to intervene in treatment decisions where they have no actual knowledge that intervention is necessary to prevent a constitutional wrong. *See Vinnedge v. Gibbs*, 550 F.2d 926 (4th Cir. 1977) (a medical treatment claim cannot be brought against managing officers of a prison absent allegations that they were personally connected with the alleged denial of treatment). Moreover, "supervisory [jail] officials are entitled to rely on medical judgments made by medical professionals responsible for prisoner care. *See, e.g., Durmer v. O'Carroll*, 991 F.2d 64, 69 (3d Cir. 1993); *White v. Farrier*, 849 F.2d 322, 327 (8th Cir. 1988)." *Williams v. Limestone County, Ala.,* 198 Fed.Appx. 893, 897 (11th Cir. 2006).

*Cameron v. Allen*, 525 F. Supp. 2d 1302, 1307 (M.D. Ala. 2007).

Finally, if Plaintiff seeks to hold Defendants liable under a theory of respondeat superior or vicarious liability, the law is settled that liability in a 42 U.S.C. § 1983 action may not be based on either of these theories. *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009) (finding that "[g]overnment officials may not be held liable for the unconstitutional conduct of their subordinates under the theory of respondeat superior."); *Cottone*, 326 F.3d at 1360 (holding that "officials are not liable under § 1983 for the unconstitutional acts of their subordinates [or co-workers] on the basis of respondeat superior or vicarious liability."). "[E]ach Government official, his or her title notwithstanding, is only liable for his or her own misconduct." *Ashcroft*, 556 U.S. at 677.

Even if supervisory liability under § 1983 cannot be established by the supervisor's personal participation in the complained acts, liability may be shown by "the existence of a causal connection linking the supervisor's actions with the violation." *Lewis v. Smith*,

855 F.2d 736, 738 (11th Cir. 1988). Although § 1983 requires a connection between the official's acts or omissions and the plaintiff's injury, an official also may be liable where a policy or custom that he established or utilized resulted in deliberate indifference to an inmate's constitutional rights. [*Marsh*, 268 F.3d at 1059 ]." *Salas v. Tillman*, 162 F. App'x. 918, 922 (11th Cir. 2006).

Plaintiff has presented no evidence to create a genuine issue of disputed fact with respect to a claim that Defendants acted with deliberate indifference to his medical needs. Nothing before the Court indicates that Defendants personally participated in or had any direct involvement with the medical treatment provided to Plaintiff. Additionally, the undisputed evidentiary materials demonstrate that medical personnel made all decisions relative to the course of treatment provided to Plaintiff and do not establish that such treatment resulted from a policy instituted by Defendants. As explained, the law does not impose upon correctional officials a duty to directly supervise health care personnel, to set treatment policy for the medical staff, or to intervene in treatment decisions where they have no actual knowledge that intervention is necessary to prevent a constitutional wrong. *Vinnedge*, 550 F.2d 926. Accordingly, Defendants are likewise entitled to qualified immunity and summary judgment is due to be granted in their favor with respect to liability based on a theory of respondeat superior. *See Celotex Corp.*, 477 U.S. at 322; *Hope*, 536 U.S. at 736.

## V.     Conclusion

Based on the foregoing, the undersigned Magistrate Judge RECOMMENDS that:

1.      Defendants' Motion for Summary Judgment (Doc. No. 30) be GRANTED.

2.      Judgment be ENTERED in favor of Defendants

3.      This case be DISMISSED with prejudice.

It is ORDERED that by **January 24, 2023**, the parties may file objections to this Recommendation. The parties must specifically identify the factual findings and legal conclusions in the Recommendation to which objection is made.  Frivolous, conclusive or general objections will not be considered by the Court. This Recommendation is not a final order and, therefore, it is not appealable.

Failure to file written objections to the proposed findings and recommendations in accordance with 28 U.S.C. § 636(b)(1) will bar a party from a de novo determination by the District Court of legal and factual issues covered in the Recommendation and waive the right of the party to challenge on appeal the District Court's order based on unobjected-to factual and legal conclusions accepted or adopted by the District Court except upon grounds of plain error or manifest injustice. *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982); 11TH Cir. R. 3–1. *See Stein v. Reynolds Sec., Inc.*, 667 F.2d 33 (11th Cir. 1982); *see also Bonner v. City of Prichard, Ala.*, 661 F.2d 1206 (11th Cir. 1981) (en banc).

DONE this 9th day of January, 2023.

JERUSHA T. ADAMS
UNITED STATES MAGISTRATE JUDGE